All right, Mr. Sterringer will be responding. Mr. Crist, will you let us know how much time you plan to reserve for rebuttal? And you may proceed. Thank you, Your Honor. May it please the Court, I am Tom Crist. I represent the defendant insurer, and if I may, I'd like to reserve five minutes for rebuttal. One moment. Cassie, I think we need to put 15 minutes on there. We've already cut you down. You may proceed. Thank you again. This is a dispute between two insurers about how to share the cost of a long-running and still ongoing cleanup of a polluted site. And the key fact is that for the longest time, for over a decade, the parties agreed on how to share those costs. And then the plaintiff went to court to seek a court-ordered allocation of the costs under a state law known by its acronym OECAA, and lawyers here pronounce that O-E-C-A. How about just the act? Pardon me? How about just calling it the act here? Okay, the act. So that 10-year delay raises the main issue on appeal and the one I want to talk about first. The act regulates insurance for environmental claims, and among other things it creates a right of contribution between insurers covering the same loss, preempting any common law remedy. Because it's a statutory remedy, it is subject to Oregon's six-year limitation for claims based upon a statute. And the claim, the clock starts when the claim accrues, and a claim accrues when you can sue on it. So plaintiff could have brought a claim against my client in 2010. For the payments made then. So the district court treated this as just every payment is a new claim, right? Yes, it did, and that's the error we're complaining about. Could I ask you, actually I'd like you to focus on something entirely different, Mr. Christ, which is this question about defense costs under the statute. Do you have the statute, the act, in front of you? Yeah. Could you look not at subsection 5, but at subsection 6? I didn't see this addressed in the briefs. If an insured is an uninsured for any part of the time period included in the environmental claim, an insurer who otherwise has an obligation to pay defense costs may deny that portion of defense costs that would be allocated to the insured under subsection 5 of this section. That looks to me like a pretty clear textual signal that defense costs are subject to subsection 5. Do you agree? Yes, I think defense costs are subject to subsection 5. I know you think that's the result. Do you think subsection 6 helps you? Hmm. I hadn't looked at it before, but I think it does, if only in the sense that it refers to defense costs. Right. And other terms. Rather than trying to play games with what's a recovered damages and recoverable costs and all of the kinds of textual debates that we saw in the briefs, why doesn't section 6 mean you win on that issue? Well, neither party discussed subsection 6, but if you think that I win under that section, then I'm happy to talk about it. Can you speak into the mic a second so I can hear you? If you think I win under that subsection, I'm happy to talk about it now. This is a slow fastball right down the middle of the plate to you, okay? I'm glad you think so. But I'll be very interested to hear what opposing counsel thinks about that subject, too. But then I guess part of the ‑‑ there's another question that wasn't really addressed in the briefs that I'd like to ask you about, and that is 4D says contribution rights under this section preempt all common law contribution rights, if any, by and between insurers for environmental claims. My question is what role, if any, you think Oregon case law plays in our interpretation of this statute, in particular the line of cases that say defense costs should be allocated in line with policy limits? Well, I think Oregon case law, common law case law, is controlling on the issue of allocation of defense costs if, as my opponent claims, and the trial court said, this statute doesn't govern that issue. I mean, the trial court's view was allocation under this statute doesn't involve, doesn't speak to the issue of defense costs only to indemnity costs, and therefore I can ignore the factor of limits. My view is, of course, that's a misreading of the statute. I think the statute itself applies limits and time on risk. The two usual factors for a contribution claim, it applies them to both defense costs and indemnity costs. But if that's not true, then you need some sort of way to allocate it, and you would revert back to the unpreempted Oregon common law, which I think is crystal clear under Oregon common law pre-OECA, and including OECA only applies to environmental claims. So outside of OECA, contribution is entirely based on limits, both defense costs and indemnity costs. That's clearly Oregon law, and, in fact, this Court on two occasions has said that is indeed Oregon law. Can I ask you a question about these limits? So I don't know that there's ever been insurance like this, but let's say there was insurance that said $100,000 indemnity limit and $1 million defense limit, right? I doubt they ever do that, but you had a different limit. What policy limit would you use if you were saying, say, that we agreed with you that you should take into account policy limits, what policy limit would you use for figuring out, when you put it into the math for the defense costs, so ignoring indemnity costs, what policy limit? Would you use the $100,000 indemnity costs limit, or would you use the $1 million defense costs limit? I will say I have never seen that. I mean, they never put limits on defense costs. I assume that if they did, the other thing is you have to look at the other policy limits. If they don't distinguish, don't have separate limits for defense costs and indemnity, I'm not sure how you compare those two. Let's say you had one policy that had $100,000, and that $100,000 went to both defense and policy. So as soon as the insurance company had paid $100,000, including even if it was all defense costs, they're done, right? But you had another one that said, we're only going to pay $100,000 for indemnity, but we'll pay up to $1 million for defense costs. So assuming we need to take into account policy limits, what limits would we use? I think then you would use the specific limit.  So I think that's the right answer. It's got to be. And so effectively here, what are the policy limits for defense costs on both these insurance contracts? What are the policy limits for defense costs? Not indemnity, but for defense costs. They're unlimited. They're unlimited, with a small caveat that once you actually meet your indemnity, then you're done having to pay defense. But then the liability would not go to some other insurer because you're not insuring at the same time. You're actually sequential. So the liability would go to the insured. So let's just assume for a second that they're unlimited. There's a little wrinkle, but they're limited. Why would we, even if we take into account policy limits, why wouldn't those policy limits be infinity for defense costs and therefore mathematically sort of fall out? So I'm not sure it's helpful. Hopefully you see where I'm going with that. I'm not sure it's helpful for you to say policy limits should be included, unless your argument is that the policy limits for indemnity costs should be used to figure out the defense costs, in which case I want to know why we would ever do that. That doesn't make sense. I was trying to work within your hypothetical, but we're not. And the only limit is... Well, the only difference I've made to the hypothetical to make it real life is instead of being a million dollars for defense costs, it's now infinity. Again, we're not dealing with two policies that say that, and we are dealing with a statute that says limits, and it doesn't say... Well, haven't the Oregon courts said repeatedly that we're going to allocate both indemnity, liability, and defense costs based on the degree of benefit and risk to the respective insurers? Yes, and they also said that the limits is the best measure of what the benefit is because the premium usually corresponds to the limits. Could I ask you, if we were to agree with you, Mr. Christ, that Section 465.4805 in the Act requires consideration of those factors in allocating defense costs, would the district judge on remand have discretion to give the policy limits a weight of zero, and why or why not? I think giving it the weight of zero is the same thing as not considering it at all. But I think that if you were to give some content to that, you would have to consider the case law that preceded the Act and that still continues, at least outside environmental claims. The district court should conclude that when the legislature came up with limits in this statute, it must have been referring to using limits in the same sense that it has always been done in Oregon, which is to look at the indemnity limit and apply that. And... You say it's always been done. You're saying there's not insurance. I've got to assume that insurance companies figured out that this is not a good idea to have unlimited defense costs and so have issued policies now that, issued policies now that, so that their limit applies not just to indemnity but also applies to defense costs. I'm not aware of any insurance policy. I do a lot of insurance work. There's some wasting policies, right? Wasting policies where it's one limit for combined indemnity and defense costs, right? Yeah, but... We don't have that in this case. We don't have that in this case. And we don't have any Oregon case I'm aware of that was addressing how to allocate by limits when there is a wasting policy or whether there is a policy with a separate limit for defense costs. So... Okay, so that's actually kind of an important concession because, as I understand, the question that you've been being asked was, what about these Oregon cases that, you know, these Oregon cases that say we need to look to the limits that are applying Oregon sort of common law? How do they apply? But if none of those cases actually deal with the issue here, which is when you have a different limit for indemnity versus defense costs. That isn't the situation here. These are not policies with different limits for defense costs and indemnity. So what's the limit for indemnity? It's $100,000 and $500,000, right? For my client's policies, they were all $100,000 limits. What's the limit for defense costs? It's unlimited. Okay, so you're telling me this is not the case here, they're not different, and you just told me two different numbers. You said $500,000 and unlimited. Both policies only have a limit for indemnity. Another way of characterizing that is that there is a different limit for defense costs. There's no limit for defense costs. Right, which is a different limit. And that has been true in all of the Oregon cases dealing with mutually repugnant conflict clauses, right? Yes, including the Oregon cases that say when you're allocating defense costs, you allocate them by limits, meaning indemnity limits. Those are all cases that did not have a defense limit. They were all cases like these where when you defend, you defend until you pay your indemnity limit. So all those cases had unlimited defense also, just like this case? Yes. Okay. That's actually pretty important. All right, well, we've taken you way down on your time, but I want to make sure that if our colleagues have any more questions. Just a second, please. I want to make sure we do have the right understanding here that an insurer has the option, despite these unlimited potential defense costs, the insurer can just pay the policy limits on indemnity and walk away from the defense, right? Usually. Usually there are some restrictions. You can't, you know, toss your limits and leave the insurer in a precarious position. Right. Yeah. Before I retire, I do want to say something about the issue of the statute of limitations. The trial judge said that each payment that the plaintiff made over this 10-year period started the clock anew. Okay. That's just wrong. Its own judgment proves that's wrong. Its own judgment gave relief both retrospectively and prospectively. It gave relief for the payments that had been made, relief in the form of damages, and it also made a declaration about the payments going forward. It requires my client for the payments in the future to share on this allocation basis, as well as one in the past. Well, that very relief could have been requested by plaintiffs at any point in time from 2010 on. All right. So we've taken it clear down to your time. You have no time left for rebuttal. Let me make sure none of my colleagues have any further questions. We've got your argument on that last issue, I think, in the briefing.   Thank you. Good morning. May it please the Court, Counsel. Charles Robert Sterringer here for National Surety Corporation, the plaintiff in this case. I'd like to take the issues in the order that you took them, if I can, starting with Judge Hamilton's question about subsection 6 of ORS 465.480. And I want to explain why that subsection is unhelpful to the decision that the court needs to make in this case today. Within ORS 465.480, there are two major topics. One of the topics relates to the relationship between an insured and an insurer. And it talks about the ability of the insured to require one of its insurers on an environmental claim to defend and indemnify with respect to all sums in the event of a claim that's covered by the Act. In addition to that, there are provisions that provide rights to the insured that is the subject of that tender, of the claim, to proceed against other insurers in contribution. You just said the rights of the insured. I think you meant the rights of the insurer who receives that tender? Correct, Your Honor. I apologize. Thank you for correcting that. So, yes, the insured has the right, once it has been put on the hook by its insured. Did I say it again?  The insurer has the right, once it's been put on the hook by its insured, to proceed against other insurers that provide coverage on the same claim. The important thing for the Court to understand in connection with Subsection 6 is it is speaking to the relationship between the insured and the insurer and the rights of the insurer with respect to time periods when the insured is essentially self-insured. It's not speaking to the rights and obligations of co-insurers. Then why the reference to that would be allocated to the insured under Subsection 5 of this section? That's because there is a factor in Subsection 5 that was inapplicable here, and that is Subsection 5. Sure, but the hypotheticals are easy. Two insurers and one period in the relevant time of no insurance and self-insurance. You'd still allocate under Section 5, right? If there were... As between the two insurers. As between the two insurers, you would allocate under Subsection 5. And if you're gauging time on risk, then you, in essence, treat the insured as if it were its own insurer for that relevant time, right? When you're doing the math. I think you're right, but the point is that Subsection 6 is only speaking, again, to the relationship between the insured and the insurer. So in that, how does Subsection 5 apply to the relationship between insured and insurer then? It doesn't. But Subsection 6 says it does. In Subsection 5, it's got to be referring to 5E, and 5E says the insured shall be considered an insurer. So you're trying to say, well, that's about the relationship between an insured and an insurer. But when you refer back to what it's got to be referring to, which is Subsection E of 5, it actually says the insured should be treated as the insurer. So I think it doesn't get you away from... I don't think it solves the problem for you. I guess the best we can say is there is a lack of clarity here because I think the plain language of Subsection 6 is talking about denying the portion of defense costs to an insured. That would be allocated under Subsection 5. I'm not sure we're advancing the ball any further here. Understood. Let me ask you more generally, though. Simple hypothetical. An environmental risk that covers two years. First year, insurance company A issues a policy with a $100,000 limit. Second year, insurance company B issues an otherwise identical policy with a $900,000 limit. So you would agree with me, I trust, that indemnity ought to be allocated on a 90-10 basis between those two insurers? It would, under Subsection 5, you would include both the limits in the calculation and the time on the risk, which in your hypothetical is even. Do I go 50-50, do I go 90-10, or somewhere in between if I'm the judge? If we're talking about indemnity costs, you're likely talking about 90-10. Okay. Is that required or just that's what judges usually do? That would be an appropriate exercise of discretion under the statute. And under those circumstances, though, under your position, the judge has to do a different calculation on defense costs and split them 50-50, right? The judge has the discretion to do so, yes, Your Honor. So why does the judge have to do two different calculations for indemnity costs and defense costs? I think that's taking us right back to the line of questioning that Judge Van Dyke had in recognizing that under these policies, which, as Mr. Chris said, and I agree, it is commonly the case that the policy limits apply only to indemnity and that defense costs are not so limited. They're limited in the way that the court has already acknowledged. I think that this issue is illustrated, I think, more clearly if we look at the facts of this case, where we're not talking about two policies that were just two policies that were adjacent to each other in time. In this case, we're talking about policies that covered a period of 15 years, from 1971 to 1987. And when I think about that, I think about a period of time from when I was two years old to when I was graduating from high school. A lot of things changed in that time frame, not the least of which was the time value of money. And so $100,000 in 1971 is very different from $100,000 in 1987. Let alone 2024. Let alone 2024. And if the theory behind the common law rule that we've been talking about, the most frequently cited to in the Lam Weston case, if the theory there is that the policy limits are some sort of indicator of the financial benefit that is reaped by the insurance company as a result of its policy, that breaks down entirely when you're talking about the types of claims that are common under the Act, which are these long-tail environmental claims that typically involve property damage that have extended over a long period of time and can implicate a lot of different policies issued at very different periods of time. So that's an interesting argument. Can you point us, the cases that I'm looking at out of Oregon on this question, Oregon auto insurance from 1952 from the Ninth Circuit, Burnett from the Supreme Court of Oregon in 1970. I may have them out of chronological sequence here. Obviously, Lam Weston in 1959, Forest Industries Insurance in 86, et cetera. All of those, at least as I understand them, allocate defense costs based on indemnity limits in the policies, right? I believe that's correct. Can you point us to any Oregon cases that, and I mean Oregon state law cases, that go in a different direction on that, that go in your direction? I cannot, and the reason is that each of the cases that you've cited, which have been cited by Tig in this case, are cases where there were two insurers that provided overlapping coverage in a period of time that covered a single event. I understand you want to distinguish them on that basis, but I'm looking for some clue in Oregon law that endorses that distinction. To find that, I think I have to take you back to our federal courts that have been most prominent in the adjudication of claims under the act. So you're talking about the district court decisions, but applying Oregon law, but seem to be going in a quite different direction for the most part. They are going, exactly, they are going in a different direction because they are recognizing that policy limits do not apply to defense costs in the same way that they apply to indemnity. Based on what in Oregon law? That's my problem. Well, I understand the problem, and your honor is correct, that none of us are able to point to a state law, a state court decision, a state appellate court decision that has had the opportunity yet to apply the act and make the decision on whether a different rule should obtain in contribution actions that are brought under the act. So what that sounds to me like is that you are trying to ask the federal courts to innovate under Oregon law. I would say the federal courts have already done that numerous times. Well, the district courts have. The question is whether that's a legitimate function for the federal courts in applying Oregon law. Well, to some extent, the legislature made a decision to grant courts, whatever courts are applying the law, the discretion to make these decisions, and this goes back, I think, to your honor's question about what happens if on remand this court decides that the factors need to be applied here, the subsection five factors need to be applied, and would it be within the court's discretion to allocate zero weight to policy limits? The legislature did provide the courts, whatever courts are adjudicating these issues, the discretion to do that. Can I just say these Oregon cases, so we've got Oregon, we've got federal courts, district courts applying, I believe, this statute that's at issue in this case, and you're saying the majority of those support you, and I think what I was hearing is that there is cases applying the common law. The cases that are looking at the policy limits for identification for these overlapping policies, are these applying this statute or are they applying the common law? Those are applying the common law. So I would thought your answer to what Oregon law supports you would have been the law the legislature passed. Well, I think I understood the question to be whether there was any appellate authority on that, but your honor is correct. Yeah, because those other cases are not applying this statute. That is correct, and that was my point, which is that there has not been an appellate court to interpret the act on this question. Is it accurate to say that the lay of the land, as far as the law here, is that we have Oregon cases that say that you take into account the identity policy limits in figuring out how you're going to allocate on overlapping claims, overlapping policies, that you're going to take the identity policy limits, even for defense costs, applying their common law, and then you have federal district courts, I think go both ways if I remember right, but the majority go your way in saying that the policy limits don't count because effectively the policy limit is infinity for those defense costs, and that's basically what we have before us, right? That is completely accurate. The only thing I would add to that is the additional point that with these common law applications, we're talking about accidents that are single point in time events rather than the sort of long tail. I understand that. I think it's very powerful, the fact that they're overlapping. What is the single event, reimbursing for a single event, as opposed to damage that in theory here happened over possibly decades? Why does that make a difference? It makes a difference, again, because the whole theory behind this common law rule is that you can use the policy limits as a gauge for what the economic benefit would be under the policy. And so if everything is happening within a narrow window of time, the policy that's issued and the event that happens, then that theory has some power that you would expect there to be some correlation between the policy limits and the economic benefit to the insurers that should be accounted for. But that breaks down when you're talking about policies over time and property damage that occurs over time. Why does that break down? The insurers are the huge beneficiaries of inflation, right, when you're reaching back 30, 40 years with policies, right? I'm sorry, could you say that again, Your Honor? The insurers are the beneficiaries of inflation. If your client issues a $100,000 policy in 1980 and doesn't have to pay the policy, maybe they have to pay the full policy limits, but they don't pay them until 2024. The policy limits aren't indexed to inflation, are they? They're not, and I think that's part of the point, in that you would expect a policy limit at a lower amount, more distant in time. Right. Why would that argument not be something that, in essence, could be custom-tailored to the different policy limits and the different time periods in an environmental case, as opposed to saying ignore policy limits altogether in dealing with defense costs? My answer to that is that the statute grants a fair amount of discretion to the courts to craft an allocation process or method that accounts for all of these factors, and what the court did here is perfectly consistent with what courts commonly do in these circumstances, and that was within the court's discretion to do so. And in this case, based on a misreading of the Oregon statute, in my view, I understand you may disagree.  We obviously, because we didn't get a chance to talk about the fact that subsection 5 is only talking about covered damages, the allocation of covered damages, and that, I think, is a complete answer to. Let me ask you, so there's been some talk, and we've taken you over, but I want to hear your answer to this, and I also want to hear your answer to it, too. Make sure I remember my question here. There's been talk about the fact that the policy, whatever your company got paid, reflects, and it kind of makes intuitive sense, reflects the policy limits. So if you sell an insurance coverage that has a $100,000 policy limit versus an insurance policy that has a half-a-million-dollar policy limit, presumably you're going to charge significantly more for the half-a-million. So that's, I think, the idea, and this seems like in these common law Oregon court cases, they refer to that concept, I believe. But if you're offering a policy that covers, arguably, one way to characterize it would be two different things, identity and what are the other is? The defense costs.  And what you're effectively giving is a limit for the one and no limit for the other. Then economically, it seems to me like any economist would tell you that unless they're making a mistake, that that's all priced in, and so both policies are essentially the same, the $100,000 and the $500,000, as far as defense costs. They're providing a finish. So that's priced in at some amount. And then on top of that, you stack on whatever your price risk is for $100,000 and then a little bit more for your $500,000. So this whole idea that this is priced into the policy sort of ignores the fact that unless they're acting irrationally, these insurance companies have exactly the same limit priced in for their unlimited defense costs. So since they're allowing unlimited defense, why doesn't that price argument from an economic perspective mean that if you're relying on it being priced in, why wouldn't that mean that a court applying these factors could say, I'm going to take into account the policy limits of the defense costs here as a separate fact because it's presumably been priced in. And so I'm going to basically make those policy limits the same if they're both infinity. And there will be some difference because of the identity, but that's not an issue in this case because you don't disagree that identity should be split separately, you know, using a different ratio. Right. I think that what it comes down to is the understanding that in the end, especially with these types of claims that involve enormous sums of money, much of which are defense costs, that the fact that the policy limits don't apply to those defense costs make it illogical to apply the policy limits in allocation of the defense costs. I think that's the logic. I hear you there. And when you say illogical, I was also asking, there's this economic argument, so to speak, that's been made in the Oregon state precedents that we've talked about, and that is this common sense notion that policy limits are reflected usually in the amount of premium. So if I give you an insurance policy for a billion dollars and somebody else gives you an insurance policy for $100, I'm going to be getting a whole bunch more, so it only makes sense that we should share. But from an economic perspective, it seems like, just like you said, logically, it seems like economically, the unlimited defense costs should be priced in also, correct? And, Your Honor, I think that is probably why it was that this court determined in one of the, I think it's Northwest Pipe case, that it was a proper exercise of Judge Brown's discretion to essentially do that. But, again, it comes back to our standard of review here and the fact that these are discretionary decisions that are put in the hands of judges to decide based on the facts and circumstances in front of them. And so, for example — But the judge here said the statute prohibits me from considering policy limits and allocating defense costs. Well, correct. That's a legal issue. The judge here decided that, and this is based on the point we haven't been able to talk about today, that Subsection 5 only applies to covered costs by its own terms, which has to be interpreted to mean indemnity costs and not including defense costs. So, yes, Judge Hernandez decided here that Subsection 5 was inapplicable, and he said — But Judge Brown, for example, in Northwest Pipe, viewed that differently and reaffirmed, right? This Court affirmed based on the exercise of discretion on the part of Judge Brown, yes. All right. Well, we've taken you way over. Do my colleagues have any additional questions? Yeah, it was a very interesting case. Why don't we put three minutes on? We may go over, but I want to have us control it. Thank you. We ask that the Court affirm. Thank you. For the visiting students, you may not have expected as much energy directed to this question of insurance law as you're seeing from everyone, but we'll get to the environmental stuff again in a few minutes. And I expect all of these students to grow up and be insurance agents and insurance lawyers because of the excitement of this issue. Go ahead. You may proceed. Thank you, Your Honor. I think the argument to this point has focused the issue for you, at least, on the allocation question. It is clear that under Oregon common law, you allocate defense costs and indemnity costs by indemnity limits. That's the rule here. That's the rule pre-OWECA. It's the rule that still applies outside insurance cases governed by OWECA. So I think the issue then becomes for you, when the legislature said the act, when the legislature said you allocate by limits, were they thinking of something else? Were they thinking, no, we are now going to separate defense costs and indemnity costs when we use the term limits? Let me ask you, then, Mr. Crist. Go back to that example that I gave your colleague, two years with a 90-10 difference on indemnity limits but equal time on risk. Under the act, would the required allocation be 90-10 for both, 50-50 for both, or some more case-specific equitable allocation that might fall somewhere in the middle? I think what it would be is it wouldn't be 50-50 because that would be simply time on risk allocation, and it couldn't be simply 90-10 because that would be simply a limits allocation. So you would try and do something like what the judge did do here with indemnity as an average of the things so that you bring both factors into play. But there's not a simple mathematical formula for it. There is not a simple mathematical formula. Can I get your view on, as I understand it, one of the main rationales that these common law cases relied on for why it makes sense to take into account the policy limits is the common sense notion that when you're buying insurance, the insurance is going to cost more if it's got a higher policy limit. But if you've got basically two-part insurance, which is what sounds like we have here, which has got a policy limit for one part but an unlimited limit for the other part, doesn't it make sense that that's sort of priced into the insurance and so the part that's unlimited for both insurances is going to share that? That's already going to be priced in. In other words, if you were to buy some insurance that said you're going to get a billion dollars of coverage for one thing and the other one is like $100 of coverage for the second aspect and the other type of insurance, the other company is going to give you $200, the driver of the cost of that insurance is going to be that billion dollars coverage in both insurance, right? Exactly. I have a million-dollar auto policy and I just bought a car for my daughter and she's going to have a $50,000 policy. I'm paying way more because I have a higher indemnity limit and she has a much lower one. But both insurance companies have the same obligation to defend. If either of us gets sued, we both get unlimited defense costs. That is indeed priced in there. The one thing that makes a difference in the price of the policy is the indemnity limit and that is why the Oregon Supreme Court when it said we are going to allocate defense costs and indemnity costs both by limits is because that's the one factor that varies between the different types of policy, the indemnity limit. And I don't know where I am time-wise. Well, I just want to probably, I think we've heard a lot. I want to see if my colleagues have any further lines of inquiry and we also thank you both for your briefing on this case. It was very good. Just because we didn't get to something today doesn't mean we're not very aware of it. Anything else? All right. Well, I think we've heard from both of you. Thank you very much for your argument. And this case is submitted as of today, which brings us to our last case.
judges: Hamilton, VANDYKE, THOMAS